IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COREY LAMONDE JAMES, #246652 | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. AW-09-2885 |
| GARY D. MAYNARD, et al., | * | |
| Defendants | | |
| | *** | |

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment, Plaintiff's self-represented opposition, and Defendants' Reply.[1] ECF Nos. 19, 23 & 30. The case is ripe for dispositive review. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

## Background

Plaintiff, a Division of Correction ("DOC") inmate, alleges that in March of 2007, he was transferred to an out of state via the Interstate Corrections Compact without notice or an

---

[1] Also pending is Plaintiff's Motion for Reconsideration of Appointment of Counsel. ECF No. 32. The Motion shall be denied. As Plaintiff has previously been advised, a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).
     Plaintiff states that as he is housed on the special housing unit he must rely upon correctional employees to make copies of documents for him in order to file his opposition with the Court. He states that correctional employees have been uncooperative with his requests for copy work. The Court is in receipt of Plaintiff's opposition including exhibits. It is unclear what additional documents he could provide in support of same. Additionally, Plaintiff could have hand copied any additional documents rather than relying on correctional staff to photo copy same.
     Plaintiff also states that he requires assistance of counsel because the Court granted Defendants' Motion to Seal Exhibit 1 to their dispositive motion. Plaintiff is not entitled to a copy of this document due its sensitive nature detailing the security measures undertaken during inmate transfers. The Court will not rely on the exhibit other than for the explanation that inmates were transferred in an effort to reduce violence within Maryland prisons and enhance safety, a fact relied upon by Defendants in their motion to which Plaintiff concedes. It is unclear why Defendants saw the need to file the security instrument rather than a simple declaration averring to the rationale for Plaintiff's transfer; however, in light of the foregoing, Plaintiff's motion shall be denied.

opportunity to be heard, in violation of his right to due process. ECF No. 1. He also complains that upon his return to Maryland, three months later, his was improperly classified to disciplinary segregation status.² *Id*.

In response, Defendants assert that in early 2007 the DOC took measures to reduce violence and increase safety, including the March 2007, operation "Outward Bound," wherein ninety maximum security inmates, including Plaintiff, were transferred unannounced to a variety of out of state correctional facilities. ECF No. 19, Ex. 1. Plaintiff was transferred to the Red Onion Correctional Center in Virginia ("Red Onion"). ECF No. 1 & 19, Ex. 2. On June 14, 2007, Plaintiff was returned to the custody of the DOC. He was initially housed at the Maryland Reception, Diagnostics and Classification Center for processing and while there reassigned to disciplinary segregation. On July 18, 2007, he was transferred to the Jessup Correctional Institution and assigned to administrative segregation. On July 19, 2007, he was reassigned to disciplinary segregation. *Id*.

A year prior to operation "Outward Bound," on March 23, 2006, Plaintiff was found guilty of several rule violations and received 880 days of segregation, to commence on January 5, 2006 and conclude on June 2, 2008. ECF No. 19, Ex. 2. On March 30, 2007, just prior to his transfer to Red Onion, Plaintiff underwent two disciplinary hearings and was found guilty of several rule infractions and sentenced to 730 days of segregation beginning June 2, 2008 and concluding June 1, 2010, and 444 days of segregation to start June 1, 2010, and conclude August 18, 2011. *Id*. After his return to the DOC, Plaintiff underwent another disciplinary hearing on

---

² In his opposition, Plaintiff raises concerns about the conditions of his confinement at the ICC institution in Virginia, and two DOC facilities, the Maryland Correctional Adjustment Center and North Branch Correctional Institution. To the extent Plaintiff believes his rights were violated by the conditions at these institutions he is free to file new civil rights complaints. The Court will not consider these claims at this time as they were not raised in his original complaint.

April 7, 2009, where he was found guilty of rule violations and sentenced to 150 days of segregation beginning August 18, 2011 and concluding January 12, 2012.[3] *Id.*

### Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

---
[3] Plaintiff's rule violations included, *inter alia*, being involved in disruptive activity, assault or battery on staff, interfering or resisting duties of staff, and possession of a weapon or article that could be modified to use as a weapon. *Id.*

3

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). In the prison context there are two different types of constitutionally protected liberty interests which may be created by government action. The first is created when there is a state created entitlement to an early release from incarceration. *Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct

credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Following the reasoning of the Supreme Court in *Sandin*, the Court finds no liberty violation implicated in the decisions associated with Plaintiff's ICC transfer, as it is not atypical for inmates to be transferred among correctional facilities. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

Before *Sandin*, the Court found in *Olim*, that an interstate prison transfer did not deprive an inmate of any liberty interest protected by the Due Process Clause, even though the transfer covered a substantial distance. The Court held in *Olim*: "[A]n interstate prison transfer, including one from Hawaii to California, does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself." *Id.* at 248. "Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." *Id.* at 245. "Statutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other States." *Id.* at 246. "Confinement in another State . . . is 'within the normal limits or range of custody which the conviction has authorized the transferring State to impose.' Even when, as here, the transfer involved long distances and an ocean crossing, the confinement remains within constitutional limits." *Id.* at 247. Here, Plaintiff has not stated a claim that may survive because Plaintiff has not identified a liberty interest that is protected by the Due Process Clause. First, Plaintiff has not identified a state statute or regulation that has mandatory language creating an enforceable expectation of a liberty interest in remaining in the DOC.

5

"[T]he ultimate determination of whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination . . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)(citing *Sandin*, 515 U.S. at 485-87). The Fourth Circuit has already determined in *Cochran v. E.C. Morris*, 73 F.3d 1310 (4th Cir. 1996), that "a claim that state regulations created a liberty interest in freedom from interstate transfer must fail given the Supreme Court's admonition that such liberty interests only inhere in regulations that impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1318; *see also Olim*, 461 U.S. at 238 ("Confinement in another State is within the normal limits or range of custody which the conviction has authorized the transferring State to impose."). Here, where regulations concerning interstate transfer are of general application and contemplate routine transfers, they do not impose "atypical and significant hardship on the inmate" as defined in *Sandin*. Because Plaintiff has not pled a legitimate liberty interest — a necessary element of a procedural due process claim — Plaintiff has failed to state a claim.

Likewise, Plaintiff's claim regarding his assignment to disciplinary segregation is subject to dismissal. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id*., 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Here, Plaintiff does not challenge the underlying disciplinary proceedings wherein he was found guilty of rule violations but rather that (1) his transfer out of state and then back to Maryland somehow

erased his need to serve the remainder of his disciplinary sentence and (2) he was entitled to be reclassified to general population. Plaintiff's argument finds no support in the law. Classification decisions do not implicate a liberty interest. As a prisoner, Plaintiff is not entitled to the process due to persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005). Expertise of prison officials in matters of security must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). There is no dispute that Plaintiff was provided all the process that was due prior to and during his disciplinary hearings, and thus, his reclassification to disciplinary segregation upon his return to Maryland to serve out his segregation sentence is within the discretion of the DOC.

**Conclusion**

In light of the above analysis, Defendants' Motion to Dismiss or for Summary Judgment shall be granted as to all claims.

Date: February 22, 2011   _____/s/_____
                          Alexander Williams, Jr.
                          United States District Judge